UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RECLAIM THE RECORDS and ALEC FERRETTI,<br><br>       Plaintiffs,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  23 Civ. 01650 (JPC)<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF REGINA L. BALLARD

Pursuant to 28 U.S.C. § 1746, I, Regina L. Ballard, do hereby make the following declaration under penalty of perjury:

1. I am the Division Chief for the Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs of the United States Department of State (the "Department"), a position in which I have served since January 2014. I am the Department official charged with the responsibility of overseeing the release of passport records and information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, and am otherwise familiar with the Department's obligation under FOIA and the Privacy Act. Prior to serving in this capacity, I served as the Team Lead for the Office of Legal Affairs and Law Enforcement Liaison.

2. I make the following statements based upon my personal knowledge, as well as upon information acquired by me in the course of my official duties.

3. The core responsibilities of the Records Management Office include: (1) responding to passport records requests made by the public (under the FOIA and the Privacy

Act); state, local, and federal agencies; other government agencies; foreign governments, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) reviewing and determining the release of passport records and information; (3) general management of passport records; and (4) the archival and retrieval of those records.

## I. PLAINTIFF'S FOIA REQUEST

4.  On June 28, 2021, the Department received Plaintiff Alec Ferretti's ("Plaintiff") FOIA request to the Department made on the same day, for "an extract of all information for deceased passport holders maintained in the passport database," which the Department tracked internally using the number F-2021-07839 and subsequently FL-2023-00054 (the "FOIA request"). Plaintiff further specified that to the extent the Department is not able to actively segregate deceased passport holders, it is to "extract data for all people whose date of birth is on or before June 28, 1920 or the date of processing of this request, whichever is later." A true and correct copy of the FOIA request is attached hereto as Exhibit 1. I am familiar with the FOIA request, which is the subject of the above-captioned litigation.

5.  This declaration explains the way the Department maintains U.S. passport records and why there are no records responsive to the FOIA request.

6.  As explained in further detail below, the Department does not possess an extract of all information for deceased passport holders maintained in its passport database, and it would be unduly burdensome for the Department to create such an extract.

7.  Accordingly, by letter dated January 30, 2024, the Department responded to the FOIA request, informing Plaintiff that the Department had not identified any records responsive to the FOIA request. A true and correct copy of that letter is attached hereto as Exhibit 2.

## II. THE DEPARTMENT'S MAINTENANCE OF PASSPORT RECORDS

8. The Department maintains U.S. passport records, which include passport applications among other items, in two formats: paper records and in an electronic database called the Passport Information Electronic Records System ("PIERS").

9. The Department's paper passport records are located at the Washington National Records Center (the "Records Center") of the U.S. National Archives and Records Administration ("NARA") in Suitland, Maryland. They are generally organized by the date they were digitized and the unique identifier or batch number assigned to a group of archival materials they belong to that have been transferred to NARA. There is no extract for these records.

10. The Department's digitized passport records are located in PIERS. These records imperfectly overlap with the paper passport records NARA holds because not all passport records have been digitized, and some paper records no longer exist.[1] The Department uses PIERS as a tool to allow Department employees to answer file questions relating to passport records. The passport data maintained by the Department does not contain information about whether an individual is deceased. PIERS does not permit a system user to extract passport data for persons born or deceased from a specific date to another specific date, and that functionality has never been available to the Department through PIERS. Rather, a PIERS system user must input an individual's personal identifiable information ("PII")—such as name, date of birth,

---

[1] The Department refers persons who are seeking their passport records to NARA if their passports were issued prior to March 1925. *See* Get Copies of Passport Records, U.S. Department of State, https://travel.state.gov/content/travel/en/passports/have-passport/passport-records.html. The Department is currently unable to ascertain precisely how much of the passport records pre-dating 1925 have been digitized, but avers that it is possible to search on PIERS for persons with birth dates in 1850 at the earliest.

Social Security Number, place of birth, date of death, or place of death—to retrieve information from PIERS, up to 250 results, beyond which no further results are shown even if they fit the criterion used.

      11.      On or about May 8, 2023, Plaintiff's counsel referred Department counsel to the Memorandum of Understanding between the Department and the U.S. Census Bureau dated January 3, 2020 ("MOU"). A true and correct copy of the MOU is attached hereto as Exhibit 3. The purpose of the MOU was to share information in furtherance of the July 11, 2019, Executive Order ("EO") 13880: Collecting Information about Citizenship Status In Connection with the Decennial Census. I understand that Plaintiff's counsel suggested that because the Department had previously shared an extract of digitized passport records from January 1, 1978, to July 31, 2020, with the U.S. Census Bureau for the decennial census, the Department must have the capacity to respond to the FOIA request, which, as noted, sought "an extract of all information for deceased passport holders maintained in the passport database." *See* Exh. 1. However, what the Department shared with the Census Bureau was a bulk, anonymized data dump of passport information based on the date they were created. I do not believe the Census Bureau had any need to search for individual records; however, even if it had wished to perform such a search within that bulk data dump, the Census Bureau would have needed to provide the Department with PII, as described in Paragraph 10 above, for the Department to conduct any such search. And to clarify, the information exchanged with the Census Bureau pursuant to the MOU was beyond that to which Department employees had access during the performance of their regular system support duties. That data dump was shared for the purpose of complying with the President's EO, *i.e.*, not in response to a FOIA request.

12. The Department also maintains Consular Reports of Deaths of a U.S. Citizen Abroad ("CRDAs"). CRDAs are created when a U.S. citizen passes away overseas and the passing is reported to a U.S. embassy or consulate. They typically include the citizen's birth date and circumstances surrounding the death, but may not contain passport data. The Department maintains CRDAs in two formats: paper records and in PIERS.

13. The Department currently estimates that there are at least 331,000 CRDAs that exist in paper form. These paper records are also stored at the Records Center. They are generally organized by the date they were digitized and the unique identifier or batch number assigned to the group of archival materials they belong to that have been transferred to NARA. The Department does not have an accurate estimate of those paper records at this time because in order to arrive at such an estimate, a Department employee would need to travel to the Records Center and physically count each paper record in each box, as each box may contain a different number of records.

14. Most of the 331,000 CRDAs that exist in paper form have been digitized. However, the Department does not maintain any extract of CRDAs, whether in paper or electronic form. CRDAs are kept separate from passport data, and the Department does not maintain an extract of CRDAs. In addition, any attempt to obtain an extract of the CRDAs in PIERS would be subject to the same limitations and concerns described herein for the Department's passport data.

15. I have inquired with the Department personnel with subject matter expertise, including in the Office of Consular Systems and Technology, concerning the Department's access to and use of its passport records and CRDAs, as well as the identification of all files likely to contain records that are responsive to the FOIA request, and no responsive records were

found. I can confirm that the Department has never created and does not currently possess or maintain an extract of either its paper or electronic passport records with the parameters specified in the FOIA request, *i.e.*, of all the information for passport holders who are deceased or were born prior to 1923.

### III. THE UNDUE BURDEN IT WOULD IMPOSE ON THE DEPARTMENT TO SATISFY THE REQUEST

16. Because the passport data the Department maintains does not contain information about whether an individual is deceased, the only way to process Plaintiff's request would be to assume that any person whose passport record contains a date of birth of 1923 or earlier—in other words, anyone past 100 years old—is deceased.

17. Because of that inherent limitation with the Department's passport data, using the Department's paper records and PIERS system to create an extract of all information for deceased passport holders would require the performance of tasks well beyond the regular duties of the Department's staff and otherwise impose an undue burden on the Department's operations.

18. The Department does not have an accurate estimate of the total volume of passport records it maintains at this time but notes that the number is likely at least in the hundreds of millions. By way of illustration, between October 2022 and September 2023 alone, the Department issued over 24 million passport books and cards, and that number does not include records related to passports that were not ultimately issued.

19. Therefore, to satisfy Plaintiffs' request to extract passport data of all deceased persons, the Department would first need to coordinate with Records Center employees to manually examine every single one of those potentially hundreds of millions of paper records on site to determine whether any individual was born in 1923 or earlier.

20. As to data from PIERS, it would not be possible to generate an extract through regular system capabilities because as I stated earlier, at most 250 results could be shown for any search criteria. In other words, at most 250 persons could be found for any given birth date, which would generally be a severe underestimate of the actual number.

21. The Department would thus need to arrange for a data pull from PIERS, which, if at all feasible, would require an extensive *ad hoc* query that does not currently exist. It would require that the Department enter into new contracts with an IT contractor to write, test, and refine the query to perform a data pull, as such a query is beyond the regular system support duties of Department employees. The results of that data pull would also need to be peer-reviewed to ensure that the correct search was conducted because of the scale of the data pull.

22. All in all, the Department's preliminary estimate is that it would need to extract over 10 million records from PIERS that might correspond to individuals meeting the parameters of the FOIA request using this *ad hoc* query. Even after their collection, the information in the data pull would not necessarily be accurate. To verify accuracy, the Department would need to undertake a lengthy process to verify the information in the data pull through PIERS, including by matching that information to the actual electronic record(s) for the individual in question and by consulting corresponding paper records at the Records Center as necessary.

23. Once all of these paper and electronic records have been collected and reconciled, they would still need to be reviewed for any third-party information and redacted appropriately prior to their production to Plaintiffs to ensure that the Department is compliant with both FOIA and other applicable statutes such as the Privacy Act.

24. The work of ensuring compliance with FOIA and the Privacy Act would fall to my division, which has been responsible for reviewing approximately 20,000 to 30,000 passport

records for its FOIA and Privacy Act cases every year. In the most optimistic of scenarios, creating a compilation of passport records for persons born before 1923 would require decades of work. That is because it would require review of over approximately 10 million records from PIERS in addition to however many that NARA employees return from the Records Center after they sift through potentially hundreds of millions of records there, and such work would displace all other work my division is responsible for, including other FOIA matters where, for instance, requesters may need their passport records as proof of citizenship or identity.

25. Nor would the CRDAs maintained by the Department provide a feasible means of creating the extract requested by the FOIA request. Extracting data from potentially tens or hundreds of thousands of CRDAs without inputting each individual's PII would be a monumental undertaking. A member or members of the Department's support team would need to conduct a search for every individual date from 1923 backwards in time (*e.g.*, December 31, 1923, December 30, 1923, and so on). The Department's support team would need to provide the entire collection of resulting reference numbers to one or more PIERS system users, who would then need to match those reference numbers, one by one, to an entry in PIERS, and then match those PIERS results with any corresponding electronic record(s). Should an electronic record not exist for the generated reference number or if the electronic record is deficient (*e.g.*, illegible), a Department employee would need to coordinate with the Records Center to manually search every box using the digitized date, unique identifier or batch number, and/or any other available information generated by PIERS to locate the corresponding paper record. Finally, a Department employee would need to ascertain whether passport data exists on each CRDA and input all the data collected from either the electronic or paper records to generate an "extract." This entire effort would require at a minimum thousands of manhours, which would necessarily

pull many if not all of Passports Records Management's employees away from their regular duties, including responding to other FOIA requests the Department receives, at a time when they are already short-staffed and thinly stretched.

## IV. CONCLUSION

26.    In connection with the FOIA request, I have considered how the Department maintains passport records, consulted Department employees with relevant knowledge and expertise, and confirmed that the Department does not possess or maintain the extract sought in the FOIA request. I have also looked into ways the Department could potentially satisfy the FOIA request and concluded that responding to the request as written would impose an undue burden on the Department's operations.

27.    The Department therefore does not have any records that are responsive to the FOIA request at issue, as the Department informed Plaintiff by letter dated January 30, 2024.

28.    Based on my experience as the Division Chief for Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs of the Department, my understanding of the request at issue, the information available to me regarding passport records in the Department's possession, and the searches conducted by the Department in connection with the request at issue, I declare that the Department conducted an investigation reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant records were investigated.

Executed by me on February 1, 2024, Washington, D.C.

*Regina L. Ballard*
        Regina L. Ballard