**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECLAIM THE RECORDS and ALEC
FERRETTI,

                       Plaintiffs,

    - against -

UNITED STATES DEPARTMENT OF STATE,

                   Defendant.

                                **23 Civ. 01650 (JPC)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND CROSS-MOTION IN SUPPORT OF**
**PLAINTIFFS' SUMMARY JUDGMENT MOTION**

March 28, 2024

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I. Preliminary Statement ............................................................................................... 1

II. Statement of Facts .................................................................................................. 1

III. Legal Standard ....................................................................................................... 3

IV. Argument ................................................................................................................ 4

    a.  Standard of Review ............................................................................................ 4

    b.  Reasonableness of Search .................................................................................. 6

        i.  Defendant failed to conduct relevant available database searches. ............................ 6

        ii.  Defendant may not rely on the ordinary user restrictions of
the Department database to deny Plaintiffs' Request. .................................................... 8

        iii.  Defendant arbitrarily misconstrued the search request. ............................................. 11

    c.  Fulfillment of the Request does not mandate creation of a new record ........................... 12

    d.  Defendant's analysis of the burden involved is based on a faulty premise
and should be disregarded. ............................................................................................. 14

V. Conclusion ............................................................................................................. 16

## **Table of Authorities**

Cases

*Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643 (2d Cir. 2023) ................................................................. 12, 13, 15

*Amnesty Int'l USA v. C.I.A.*, 728 F.Supp.2d 479 (S.D.N.Y. 2010) ............................................ 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 3

*Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993) .......................................................... 4

*Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916 (9th Cir. 1992) ................ 16

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994) ..................................................... 4

*Forsham v. Harris*, 445 U.S. 169 (1980) ................................................................................... 13

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) ............................................. 4

*Halpern v. Federal Bureau of Investigation*, 181 F.3d 279 (2d Cir. 1999) ............................... 12

*Immigrant Def. Project v. United States Immigration & Customs Enf't*,
208 F. Supp. 3d 520 (S.D.N.Y. 2016) ............................................................................. 5, 12

*Knight First Amendment Inst. at Columbia Univ. v. Ctrs. for Disease Control & Prevention*,
560 F. Supp. 3d 810 (S.D.N.Y. 2021) .................................................................................. 6

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177 (2d Cir. 1988) ........................... 4

*Long v. ICE*, 2018 WL 4680278 (D.D.C., 2018) ....................................................................... 13

*Long v. OPM*, 692 F.3d 185 (2d Cir. 2012) ............................................................................... 4

*NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice*,
463 F. Supp. 3d 474 (S.D.N.Y 2020) ................................................................................. 5, 6

*Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*,
877 F. Supp. 2d 87 (S.D.N.Y. 2012) ............................................................................. 5, 6, 8

*Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995) ................................ 11

*Petroleum Info. Corp. v. United States Dep't of Interior*,
298 U.S. App. D.C. 125, 976 F.2d 1429 (1992) ................................................................. 15

*Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*,
585 F.2d 1382 (2d Cir. 1978) ............................................................................................. 13

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79  (2d Cir. 2004) .................................................. 4

*Prop. of People, Inc. v. U.S. Dep't of Justice*, 530 F. Supp. 3d 57 (DDC 2021) ......................... 16

*Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116  (E.D.N.Y. 1997) .......................... 4

*Reclaim the Records v. Department of Veterans Affairs*, 18 Civ. 8449 (PAE),
    2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020) ......................................................................... 15

*Ruotolo v. Dep't of Justice, Tax Div.* 53 F.3d 4 (2d Cir. 1995) ................................................... 16

*SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197 (1991) ........................... 5

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657 (D.C. Cir. 2003) ............................................. 11

*United States DOJ v. Julian*, 486 U.S. 1 (1988) ......................................................................... 4

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ..................................................................... 3

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ................................... 3

*Whitaker v. Dep't of Commerce*, 970 F.3d 200 (2d Cir. 2020) ...................................................... 6

*Wolf v. Central Intelligence Agency*, 569 F. Supp. 2d 1 (D.D.C. 2008) ...................................... 16

**Statutes**

5 U.S.C. §§552 *et seq.* .......................................................................................................... 1, 11

Pub. L. No. 104-231, 110 Stat. 3048 (1996) ............................................................................. 12

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................................... 4

## I. Preliminary Statement

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 *et seq*., seeking the extraction of data concerning deceased passport holders maintained in the database of Defendant United States Department of State (the "Department" or "DOS"), and improperly withheld in response to a request by Plaintiff Alec Ferretti.

Plaintiffs oppose Defendant's motion for summary judgment because Defendant does not demonstrate entitlement to judgment as a matter of law. The contradictions, inconsistencies and unresolved questions in Defendant's presentation show Defendant has not met its burden at summary judgment.

Plaintiffs seek an injunction requiring Defendant to disclose all non-exempt records responsive to Plaintiffs' request.

Plaintiffs move for summary judgment because Defendant has failed to claim any valid exemption for the requested records and therefore must disclose the data.

## II. Statement of Facts

Plaintiff Reclaim the Records, of which Plaintiff Alec Ferretti is a board member (together, "Plaintiffs"), is a non-profit group of genealogists, historians, journalists, teachers, and open government advocates who use Freedom of Information requests to acquire genealogical records from government sources, including government archives. They then make the records freely available to the public without paywalls. Through these efforts, they have successfully reclaimed millions of historical and genealogical records for free public use. Dkt. 1, ¶6.

On June 28, 2021, Plaintiff Ferretti submitted a Freedom of Information Act request to the DOS via email, requesting "an extract of all information for deceased passport holders maintained in the passport database." Declaration of David B. Rankin ("Rankin") Exhibit A ("Ex. A") (the "Request"). The Request specified that, to the extent the Department was unable to actively

segregate deceased passport holders and because "the policy of the Department is to consider all individuals deceased 100 years after their date of birth," the request should also "extract data for all people whose date of birth is on or before" the date one hundred years prior to the processing date of the Request. *Id.* Finally, the Request specified production to be provided electronically. *Id.*

An acknowledgement of the Request was received on April 3, 2023. Rankin Ex. B.

On March 21, 2023, after 21 months with no response from the Department, Plaintiffs served the Summons and Complaint in this matter, seeking to compel production of the Request. Dkt. 7. A short correspondence between counsel for the parties followed in May, June and July 2023 regarding the contents and capacities of the Department's databases. In the course of this correspondence, several internal Department documents obtained through Plaintiffs' own research were provided to Defendant's counsel in support of Plaintiffs' Request.

On May 8, 2023, Plaintiffs supplied Defendant with a copy of a Privacy Impact Assessment ("PIA") for the Department's "Passport Information Electronic Records System (PIERS)" database, which is dated 10/2020. Rankin Ex. C. This 15-page document, downloaded from the Department of State website,[1] provides detailed, technical responses to questions about the Department's database within numerous categories relating to privacy concerns, including general information about the database system, use of the information stored in the database, sharing of information stored in the database, security controls, and data access.

Two days later, on May 10, 2023, Plaintiffs supplied Defendant with a "Memorandum of Understanding Through Which The U.S. Census Bureau Acquires U.S. Passport Data From The U.S. Department of State, Bureau of Consular Affairs" ("MOU"). Dkt. 29-3. This 18-page document, signed on January 3, 2020 by representatives of the Census Bureau and the Department

---

[1] *See* https://www.state.gov/wp-content/uploads/2020/11/Passport-Information-Electronic-Records-System-PIERS-PIA.pdf, *last accessed* February 18, 2024.

of State, established the terms of an agreement in which the Department of State, through its Bureau of Consular Affairs, provided "an extract of all available specified digital U.S. passport data to the Census Bureau". Dkt. 29-3, p. 1. The MOU specified, among other things, what data was to be extracted, how the transfer would happen, what security controls would be in place, and what responsibilities were borne by each party.

Finally, on January 30, 2024, eleven months after Plaintiffs initiated the instant litigation, and more than two and a half years after the initial request, the Department emailed Mr. Ferretti, stating that it "has located no responsive records subject to the FOIA." Dkt. 29-2. The position taken by the Department runs counter to Plaintiffs' understanding of how the passport records are stored and is contradicted by the various documents found by Plaintiffs and provided to Defendant.

### III. Legal Standard

In ruling on a motion for summary judgment and assessing whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions, must be viewed in the light most favorable to the party opposing the motion).

It is the initial burden of a movant to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief as a matter of law. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The non-movant carries only "a limited burden of production," but "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine

issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993)).

## IV. Argument

### a. Standard of Review

"FOIA was enacted to promote honest and open government, and to ensure public access to information created by the government in order to hold the governors accountable to the governed." *Long v. OPM*, 692 F.3d 185, 190 (2d Cir. 2012) (internal citations omitted). As the United States Supreme Court has put it, "[t]he mandate of the FOIA calls for broad disclosure of Government records, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed." *United States DOJ v. Julian*, 486 U.S. 1, 8 (1988) (internal citations omitted). Regarding disclosure, "all doubts [are to be] resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988).

Most FOIA actions are resolved on summary judgment pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812. "In evaluating whether to grant a motion for summary judgment in a FOIA action, a district court must review the facts in a light most favorable to the requestor." *Rabin v. United States Dep't of State, CIA*, 980 F. Supp. 116, 120 (E.D.N.Y. 1997).

"A withholding agency that has fulfilled its substantive obligation to produce responsive documents under FOIA can demonstrate the adequacy of its search at the summary judgment stage through the submission of detailed declarations describing the search procedures used. . . . Agency

affidavits describing the underlying searches are accorded a presumption of good faith." *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526-27 (S.D.N.Y. 2016) (internal citations omitted).

"Summary judgment is inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.' In addition, plaintiffs may defeat summary judgment if they can show 'some tangible evidence' that defendants have not satisfied their burden. Where 'an agency has not satisfied its burden, a showing of bad faith is not necessary' in order to defeat a motion for summary judgment." *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (internal citations omitted).

"The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id*. at 96. "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1201 (1991).

"In applying this reasonableness standard, courts consider, among other things, 'the search terms and type of search performed' and the 'nature of the records system or database searched.' … Search terms must 'be reasonably tailored to uncover documents responsive to a FOIA request.'" *NAACP Legal Def. & Educ. Fund, Inc. v Dep't of Justice*, 463 F. Supp. 3d 474, 484 (S.D.N.Y 2020).

"Although an agency need not expand a search beyond the four corners of the language of the request, it must 'adher[e] to the full scope or the precise language of the plaintiff's request'. And, most importantly, an agency must 'construe [FOIA requests] liberally.'" *Knight First Amendment Inst. at Columbia Univ. v Ctrs. for Disease Control & Prevention*, 560 F. Supp. 3d 810, 821 (S.D.N.Y. 2021) (internal citations omitted).

### b. Reasonableness of Search

Defendant relies on technical justifications for its refusal to extract the data requested. Their justifications are not supportable, and are contradicted by information in the Department's own documents, the PIERS Privacy Impact Assessment and the Census Bureau MOU, and the Declaration of Ron Schnell in Support of Plaintiffs' Memorandum of Law ("Schnell Decl."). Nothing in Defendant's papers show that a search was actually performed, and certainly not one that could be "reasonably expected to produce the information requested," *Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206-07 (2d Cir. 2020). Instead, in language suggesting a decision to search for an existing document rather than to extract existing data from its own database, Defendant asserts that the Department "has never created and does not currently possess or maintain an extract of passport records with the parameters specified in the FOIA request". Dkt. 30, p. 4 (emphasis added). In light of the issues Plaintiffs discuss herein, this conclusory language "raises serious doubts as to the completeness of the agency's search." *NAACP Legal Def. & Educ. Fund, Inc. v. Dep't of Justice*, 463 F. Supp. 3d 474, 483 (S.D.N.Y. 2020), *citing Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency* , 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012).

### i. *Defendant failed to conduct relevant available database searches.*

Declarant Ballard confirms that the Department maintains an electronic database system containing digitized passport records, and further states that a system user may search that database

6

by inputting an individual's personal identifiable information ("PII"). These PII include date of birth and date of death. Dkt. 29, ¶¶8, 10. Defendant had the opportunity to search the system using these search criteria in an effort to extract electronic records responsive to Plaintiffs' Request. These searches were not done.

Defendant could have searched the Date of Death field to obtain records of deceased passport holders. While it is possible that many of the individual records in PIERS contain no information in that field, there are surely some number of records that contain a non-null entry in that field, indicating that the individual associated with each such record is deceased. It is inconceivable that there are no entries containing some date in this field. A database query for all records containing a non-null entry in the Date of Death field, such as `Select * from passport_data where deceased_date is not NULL`, would return the information from all of the records where some value is entered in the date of death field, from the database table called "passport_data". Schnell Decl. ¶18.[2] This query would correspond to deceased individuals, which records would be responsive to the "information for deceased passport holders" segment of the Request. Defendant could have made such a search, but it failed to do so.

Likewise, Defendant could have searched the database using the Date of Birth field, and extracted records for which this entry contained a value earlier than June 28, 1920 or the date a hundred years prior to the date of the search. A database query such as `Select * from passport_data where birth_date < '1924-03-26'` would return the information from all of the records where the date of birth is recorded to have been more than 100 years from March 26, 2024, from the database table called "passport_data". Schnell Decl. ¶17. This would

---

[2] Note that all examples cited from Mr. Schnell's Declaration use placeholder terms for the actual names of database tables and columns in those tables. Schnell Decl. ¶25.

have produced an extract of records responsive to the second segment of the Request, but Defendant failed to conduct this search as well.

The Ballard Declaration mentions that passport records data exists in PIERS for persons born as early as 1850 (see Dkt. 29, p. 3, n. 1); thus, for the "born before 1920" segment of the Request at least 70 years' worth of potentially responsive electronic records were not searched. Together with the failure to search the Date of Death field, this "raises serious doubts as to the completeness of the agency's search," *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012)

> ii. **Defendant may not rely on the ordinary user restrictions of the Department database to deny Plaintiffs' Request.**

Declarant Ballard suggests that technical limitations in the PIERS user interface prevent any searches from being conducted. Specifically, she states that the database does not permit a field search within a range of dates (such as "birthdate prior to June 28, 1920"), and that the number of results of any search will be capped at 250, even if more records are responsive to a given search query. Dkt. 29, ¶10. These limitations, if insurmountable, would significantly limit the capacity of PIERS to carry out the basic functionalities of a database. However, these limitations are Defendant's own creation, and can be and have been modified to give the Department database greater technical flexibility in appropriate circumstances.

A more likely scenario is described by the PIERS Privacy Impact Assessment ("PIA"). Rankin Ex. C. That document demonstrates that the alleged limitations are not inherent to the database itself, but only to the user interface by which a Department employee accesses the data when conducting their job requirements. Under the section heading "Data Access", the PIA provides that the specifics of an individual user's access to the database depends on that user's job functions:

> An individual's job function determines what data can be accessed
> as approved by the supervisor and the site Information Systems
> Security Officer. Access is role based and the user is granted only
> the role(s) required to perform officially assigned duties.

*Id.*, p. 14. Thus, Defendant's own document explains that the access provided to a system user in the normal course of business – which Declarant Ballard describes as "answer[ing] file questions relating to passport records" (Dkt. 29, ¶10) – is narrowly tailored to the needs of those tasks.

Plaintiff's Request requires a different set of tasks distinct from those of a daily system user, including access to a broader set of search parameters and the ability to export the resulting data in bulk, rather than limited to a capped quantity of records. The PIERS PIA indicates that supervising officers should be able to determine and assign individualized access levels consistent with this task, likely in conjunction with System Administrators who manage the computer system and supporting applications, or the Database Administrators, who perform database maintenance and troubleshoot technical issues (*see* <u>Rankin Ex. C</u>, p. 14). However, if providing this access in appropriate instances is not within the technical capacities of the PIERS user interface, an authorized user with direct database access could make record retrieval queries directly to the database using standard database tools, rather than through the PIERS interface. Schnell Decl. ¶¶22-23. When an organization has access to a specialized user interface such as PIERS, they also would need to have access to those standard tools as well. *Id.*, ¶23. Defendants should not be permitted to use a limited-access user interface as an excuse for withholding its responsive data.

The discussion of the Memorandum of Understanding ("MOU") at ¶11 of the Ballard Declaration (Dkt. 29) is not to the contrary, and adds support to Plaintiff's position. The MOU memorializes an arrangement between the Department and the U.S. Census Bureau, by which the Department would provide "an extract of all available specified digital U.S. passport data" beginning in 1978. Dkt. 29-3, pp. 1-2. This data set would necessarily require the extraction of

data across a broad range of dates, and in quantities substantially exceeding 250 records, which are the limitations described by Defendant. Declarant Ballard affirms that indeed, the Department shared "a bulk, anonymized[3] dump of passport information" with the outside agency, and that "the information exchanged with the Census Bureau pursuant to the MOU was beyond that to which Department employees had access <u>during the performance of their regular system support duties</u>." Dkt. 29, ¶11 (emphasis added). In other words, those regular system support duties – "answer[ing] file questions relating to passport records" – though inadequate to the tasks the Department agreed to in the MOU, did not preclude compliance with it. The Department database itself is clearly not the source of the technical restrictions applied to the Department staff users for their ordinary tasks, and has the capacity to produce a data extract along the lines of what is in the Plaintiffs' Request.

Insofar as compliance with the MOU required the Department to configure its database to permit broader access to the data it contains, Defendant cannot now state that the database is incapable of providing an extract of Department data, even though doing so may exceed the ordinary limitations of a Department employee's usual support duties. Declarant Schnell, based on his decades of experience in this arena, likewise asserts "that it would not be burdensome for the Government to retrieve the records as requested by the Plaintiff in this matter, and that it would take a matter of hours to construct and test the query, and then run it without risk to the data, and that the resulting data could be exported to a file responsive to the Plaintiff's request." Schnell Decl. ¶30.

---

[3]  Declarant Ballard's assertion at Dkt. 29, ¶11 that the data extract was "anonymized" at the time of transfer to the Census Bureau is inconsistent with the MOU at page 2, where the Department (through the Bureau of Consular Affairs) agreed that "the Census Bureau will ensure … that Social Security Numbers are replaced with a protected, unique Identification Key prior to making linked data available", and "to allow the Census Bureau to use its record linking processes to assign, where possible, person and address identifiers to each record in the U.S. passport data." Dkt. 29-3, p. 3. *See also* United States Census Bureau, "Data Ingest and Linkage", at https://www.census.gov/about/adrm/linkage/technical-documentation/processing-de-identification.html (last accessed March 26, 2024), describing the processes by which sensitive PII such as Social Security Numbers are removed and replaced with unique linking keys by a small Census Bureau staff.

Defendant cites no authority for the proposition that an agency may limit a FOIA search to documents that can be located within the scope of the regular activities of the employees generally handling the requested data, and there is no such exception in the FOIA statute, 5 U.S.C. §552(b)(1-9).

### iii. Defendant arbitrarily misconstrued the search request.

Plaintiff, in using the phrases "an extract" and "please extract" in the Request, anticipated the Department would produce a copy of the data already maintained in its database, limited to the records of people known to be deceased, or who were born at least one hundred years earlier and can be presumed to be deceased.[4] Rather than view the Request as asking the Department to extract the relevant data from its database, Defendant chose to view the Request as asking for an already-produced document matching the search terms. See Ballard Declaration at ¶9 ("There is no extract for these records"), ¶14 ("the Department does not maintain an extract of CRDAs"), ¶15 ("the Department has never created and does not currently possess or maintain an extract of either its paper or electronic passport records with the parameters specified in the FOIA request"), ¶26 ("the Department does not possess or maintain the extract sought in the FOIA request"). It is patently unlikely that Defendant had ever produced a separate document, independent of the data in the database, which precisely matched the specific parameters of Plaintiffs' Request. Focusing a search on such a document, rather than a process of extracting data responsive to the Request, would nearly guarantee a negative result.

Defendant must construe a FOIA request liberally. *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995); *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 498

---

[4] *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 665 (D.C. Cir. 2003) (finding reasonable "the Government's use of 100 years as the basis" to presume that an individual is dead.)

(S.D.N.Y. 2010); *Immigrant Def. Project v. United States Immigration & Customs Enf't*, 208 F. Supp. 3d 520, 526 (S.D.N.Y. 2016). Any ambiguity as to the meaning of "an extract" in the first sentence of Plaintiff's five-sentence Request would resolve to its intended meaning by the fourth sentence, instructing the Defendant to "extract data" to complete the Request. To the extent there may have been uncertainty as to what was being requested, it would be reasonable for the Department to seek clarification from the requesting party, which was not done here. *Halpern v. Federal Bureau of Investigation*, 181 F.3d 279, 289 (2d Cir. 1999). Defendants should not be permitted to use an unreasonably restrictive construction of the Request to justify their lack of a meaningful search calculated to produce responsive results.

### c.  Fulfillment of the Request does not mandate creation of a new record.

Defendant acknowledges that it possesses a database containing the data requested by Plaintiff. Dkt. 30, p. 2. Extracting the specified data, and providing it in a form requested by the Plaintiff, would not entail the creation of a new document, as Defendant argues, but would be well within the requirements of FOIA as modified by the 1996 Electronic Freedom of Information Act Amendments ("E-FOIA Amendments"), Pub. L. No. 104-231, 110 Stat. 3048 (1996).

The E-FOIA Amendments "make plain that the threshold 'record' requirement for FOIA, as well as that Act's full-disclosure, narrow-exemption philosophy, applies equally in the electronic and the physical contexts." *Am. Civil Liberties Union Immigrants' Rights Project v. United States Immigration & Customs Enforcement*, 58 F.4th 643, 653 (2d Cir. 2023) ("*ACLU v. ICE*"). They require responding agencies to produce "a responsive 'record in any form or format requested by the person if the record is readily reproducible in that form or format'," *id.*, and "to make 'reasonable efforts to search for the records in electronic form or format'," *id.* Finally, an agency's need to employ "the application of codes or some form of programming to retrieve the information" would "not amount to the creation of records." *Id. See also Long v. ICE*, 2018 WL

4680278 (D.D.C., 2018) ("Neither sorting a pre-existing database of information to make information intelligible, nor extracting and compiling data … as to any discrete pieces of information that [an] agency does possess in its databases, amounts to the creation of a new record.") The ability to export the results of database queries is common to all modern databases. Schnell Decl. ¶19. Accordingly, if the requested data exists in a Department database, the act of searching for it using standard database query functions and providing the results in a format specified by Plaintiff Ferretti would not entail the creation of a new record.

The authority cited in Defendant's brief at page 6 pre-dates the 1996 E-FOIA Amendments, and in any case are inapposite here. In *Forsham v. Harris*, 445 U.S. 169 (1980), the Supreme Court was concerned with whether FOIA mandated an agency to obtain <u>outside documents</u> to which the agency had a right of access, but did not already possess, unlike data already possessed by the agency as in the instant matter. *Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382 (2d Cir. 1978) reasonably states that "an agency does not rewrite a document or create informational material. It discloses existing documents, which it has already prepared." Plaintiffs are not asking for any documents to be re-written or annotated;[5] they merely request data to be extracted from a database maintained by the Agency. Subsequent to the 1996 E-FOIA Amendments, in an age increasingly reliant on information held in databases, the rule in the Second Circuit is clear: "using a query to search for and extract a particular arrangement or subset of data already maintained in an agency's database does not amount to the creation of a new record." *ACLU v. ICE*, 58 F. 4th at 658 (citation omitted).

---

[5] Declarant Schnell asserts that the sample database queries found in his Declaration (see ¶¶17-18 and 24) are coded so they would not overwrite or modify any data in the database. Schnell Decl. ¶26.

**d. Defendant's analysis of the burden involved is based on a faulty premise and should be disregarded.**

Defendant's papers go to great lengths in describing the process by which it would undertake the production of the data requested, with many steps and "at a minimum thousands of manhours" of Department labor. Dkt. 30, p. 9. This calculation, however, improperly assumes that the individualized database access restrictions applied to Department employees in the scope of their regular job functions would also restrict the extraction of data from the database pursuant to the Request. As discussed *supra* at pp. 8-9, those restrictions apply to the access needs of Department staff who "answer file questions relating to passport records" (Dkt. 29, ¶10), and they should not serve as a baseline for measuring the burden associated with the very different access needs of extracting data responsive to Plaintiffs' Request.

Defendant's elaborate description of how data concerning Consular Records of Deaths of a U.S. Citizen Abroad ("CRDAs") might be extracted using PIERS posits that as an initial step, a search would need to be conducted for every individual date from 1923 to as far back as records are kept, with further manual steps using that data. Dkt. 30, p. 9. This description likewise improperly assumes that database access permissions preventing searches by a range of dates cannot be modified. As discussed *supra* at p. 9, the PIERS PIA document describes how supervising officers determine and assign individualized access levels to Department staff, and how System Administrators and Database Administrators have other tools to manage the database. Rankin Ex. C, pp. 9, 14. The ability to search and extract data over a range of dates is well within the capacities of a standard database (see Schnell Decl. ¶¶14-19). The contradictions between the PIA document and the Declarant's assertions concerning the limitations of the PIERS database at the least present triable issues of fact, and are amplified by the Schnell Declaration. Summary judgment for Defendant and dismissal here is wholly inappropriate.

Alternatively, Defendant acknowledges that the requested data, which it broadly estimates at over 10,000,000 records, <u>can</u> be extracted (using the term "data pull" rather than "extraction") via a database query designed for that purpose. Dkt. 30, p. 8. Although Defendant frames this as a highly irregular, "ad hoc" feat of programming, it provides no foundation for the magnitude of its concern or any estimation of the time it would take an SQL database programmer to complete the task. Declarant Schnell estimates, on the basis of his experience designing and managing large databases, that even if the data involved were spread between tables or even other databases, the necessary queries could be constructed and tested in a matter of hours. Schnell Decl. ¶25. Even if 10,000,000 records were involved, this would not increase the burden of the search. *Id*., ¶19.

Given that "the application of codes or some form of programming to retrieve the information" was specifically approved by Congress in enacting the E-FOIA amendments, *ACLU v. ICE*, 58 F.4th at 653, citing H.R. Rep. No. 104-795, at 22, Defendant's position here fails.

Defendant's concern for the accuracy of the data extracted is not a basis for exemption. *See Reclaim the Records v. Department of Veterans Affairs*, 18 Civ. 8449 (PAE), 2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020), at *21-22 (rejecting defendant agency's accuracy concerns as a basis for withholding records) ("[T]he FOIA statute does not give an agency license to broadly withhold non-exempt records because the agency has errantly commingled them with exempt records.[…] And a judge-made rule permitting over-withholding in such circumstances … would contravene FOIA's purposes.") If the agency is concerned with the inaccuracies of its data, it may choose to include a disclaimer on the front of its release detailing these concerns. *Petroleum Info. Corp. v. United States Dep't of Interior*, 298 U.S. App. D.C. 125, 976 F.2d 1429, 1437 (1992) ("The Bureau, moreover, does not convincingly explain why its concerns with [the consequences of releasing a report with errors] could not be allayed by conspicuously warning FOIA requesters…

that the Bureau disclaims responsibility for any errors or gaps"); *see also Assembly of Cal. v. United States Dep't of Commerce*, 968 F.2d 916, 923 (9th Cir. 1992) ("inaccuracy is not a basis for FOIA exemption"). Accordingly, the "lengthy process to match that information to the actual electronic record" and "consulting corresponding paper records at the Records Center", Dkt. 30, p. 8, are wholly unnecessary, and not a proper justification for withholding records.

Put plainly, Defendant presents a substantially inaccurate and inflated assessment of the burden associated with extracting data from the Department's database in response to Plaintiffs' Request, and provides no useful measure to compare with the examples of unreasonable burden listed in *Ruotolo v. Dep't of Justice, Tax Div.* 53 F.3d 4 (2d Cir. 1995), cited at page 7 of Defendant's brief. Courts often look for "a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Prop. of People, Inc. v. U.S. Dep't of Justice*, 530 F. Supp. 3d 57 (D.D.C. 2021), citing *Wolf v. Central Intelligence Agency*, 569 F. Supp. 1, 9 (D.D.C. 2008). But where that explanation is based on as many inaccuracies as in the present matter, and is contradicted by an expert in the field, it clearly presents an issue of fact unresolvable at summary judgment.

## V. Conclusion

Defendant's motion for summary judgment should be denied. Defendant has failed to meet its threshold burden of resolving any ambiguities or factual uncertainties. Questions about the technical capacity of the PIERS database to export records responsive to the Request are unresolved, and a Department-authored Privacy Impact Assessment along with details of a similar previous data extraction outlined in the MOU appear to contradict Defendant's assertions about the limitations of that database. Defendant has not demonstrated that any search was conducted in response to the Request, and certainly not one calculated to locate responsive records. For these reasons, Defendant's motion should be denied and Plaintiffs' cross-motion granted.

Dated:        March 28, 2024
              New York, New York

                                    Respectfully submitted,

                                    BELDOCK LEVINE & HOFFMAN, LLP
                                    99 Park Avenue, PH/26th Floor
                                    New York, New York 10016
                                    *Attorneys for Plaintiff*

                                    By: _____
                                    Benjamin Meyers, Of Counsel
                                    t: 646-496-2353
                                    e: ben.meyers.esq@proton.me

                                    David B. Rankin
                                    t: 212-277-5825
                                    e: drankin@blhny.com