UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RECLAIM THE RECORDS and ALEC FERRETTI,

Plaintiffs,

-v-

UNITED STATES DEPARTMENT OF STATE,

Defendant.

23 Civ. 1650 (JPC)

---

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2614
Email: rebecca.salk@usdoj.gov

REBECCA L. SALK
Assistant United States Attorney
    - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………….1

ARGUMENT…...………………………………………………………………………………3

I.     The Court Should Grant Summary Judgment to the Agency on the Adequacy of its
       Searches, Which Were Reasonably Calculated to Uncover All Relevant Records……....3

II.    Producing the Data Underlying Plaintiffs' Requested Extract Would Impose an
       Enormous Burden on the Agency that Exceeds FOIA's Requirements…………..………5

III.   Plaintiffs Fail to Rebut the Presumption of Good Faith Accorded to the
       Agency's Declarations…………………………………………………………….....9

CONCLUSION…………………………………………………………………………...…10

i

## TABLE OF AUTHORITIES

PAGE(S)

Cases

*Garcia v. U.S. Dep't of Justice*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ................................................................................ 3

*Grand Cent. P'ship, Inc. v Cuomo,*
    166 F.3d 473 (2d Cir. 1999) .............................................................................................. 4, 9

*Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*,
    No. 22 Civ. 8344 (ER), 2024 WL 476304 (S.D.N.Y. Feb. 7, 2024) ................................. 5

*Hall v. Central Intelligence Agency*,
    538 F. Supp. 2d 64 (D.D.C. 2008) .................................................................................... 10

*Halpern v. F.B.I.*,
    181 F.3d 279 (2d Cir. 1999) .............................................................................................. 4

*Int'l Counsel Bureau v. U.S. Dep't of Defense*,
    723 F. Supp. 2d 54 (D.D.C. 2010) .................................................................................... 7

*In't Veld v. Dep't of Homeland Sec.*,
    589 F. Supp. 2d 16 (D.D.C. 2008) .................................................................................... 10

*Judicial Watch v. Dep't of Commerce*,
    337 F. Supp. 2d 146 (D.D.C. 2004) .................................................................................. 10

*Long v. Immigr. & Customs,*
    *Enf't,* 149 F. Supp. 3d 39 (D.D.C. 2015) ......................................................................... 9, 10

*NAACP Legal Defense & Educ. Fund, Inc. v. Dep't of Justice*,
    463 F. Supp. 3d 474 (S.D.N.Y. 2020) ............................................................................... 4

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*,
    877 F. Supp. 2d 87 (S.D.N.Y. 2012) ................................................................................. 4

*People for American Way Foundation v. U.S. Dep't of Justice*,
    451 F. Supp. 2d 6 (D.D.C. 2006) ...................................................................................... 7

*SafeCard Services, Inc. v. S.E.C.*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................ 4

*Whitaker v. Dep't of Commerce*,
  970 F.3d 200 (2d Cir. 2020) .................................................................................................. 3

**Statutes**

5 U.S.C. § 552(a)(4)(B) ............................................................................................................... 10

U.S.C. § 552(a)(4)(B) .................................................................................................................... 2

Defendant United States Department of State (the "Department" or the "Agency"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion for summary judgment, ECF No. 28, and in opposition to Plaintiffs Alec Ferretti's and Reclaim the Records' (collectively, Plaintiffs") cross motion for summary judgment, ECF No. 34.

## PRELIMINARY STATEMENT

Plaintiffs submitted a Freedom of Information Act ("FOIA") request to the Department seeking "an extract of all information for deceased passport holders maintained in the [Agency's] passport database," or alternatively, if the Department was unable to "actively segregate" the data of deceased passport holders from its "passport database," Plaintiffs requested that the Department "extract data for all people whose date of birth is on or before June 28, 1920 or the date of processing of [the] request, whichever is later."  Plaintiffs' Complaint ("Pls. Compl."), ECF No. 1, ¶ 9.  As explained in the detailed declaration of Regina L. Ballard, which was submitted in support of the Department's opening brief, the Department conducted a search of its files that was reasonably likely to uncover responsive records.  Declaration of Regina L. Ballard ("Ballard Decl."), ECF No. 29, ¶ 15.  However, the Agency determined that it has never maintained an extract of either its paper or electronic passport records within the parameters specified in the FOIA request.  *Id.* ¶¶ 6, 8-10, 15.  Moreover, the Department investigated the feasibility of producing the relevant underlying data that would comprise the requested extract but determined that doing so would impose a very substantial burden on the Agency that far exceeds what is required under FOIA.  *See id.* ¶¶ 16-25.[1]

---

[1] The extreme burden that Plaintiffs' request would impose is further addressed in the Supplemental Declaration of Regina L. Ballard ("Supp. Ballard Decl.") and the Reply Declaration of Sharon Westmark ("Westmark Decl."), which accompany the Department's Reply Memorandum of Law. *See also infra* p. 4-8..

Plaintiffs argue that the Department has failed to meet its burden on summary judgment with respect to the adequacy of its search. Plaintiffs' argument is without merit. The Department's declarations describe in more than reasonable detail the scope and method by which the search was conducted, which satisfies the Department's burden on summary judgment. Furthermore, Plaintiffs have not shown—nor can they show—that the Department's search was patently incomplete or conducted in bad faith. Plaintiffs rely on the declaration of Ron Schnell to support their argument that the Agency can make certain queries of the information already in its database to satisfy their FOIA request. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls. MOL"), ECF No. 37, 6-8. However, Plaintiffs' attempt to discredit the Department's search with its own declaration is inappropriate and insufficient to overcome the personal, knowledge-based declarations submitted by the Agency.

Finally, Plaintiffs claim that the Department's arguments regarding the burden imposed by their request should be "disregarded." Pls. MOL at 18-21. But the Department's detailed and thorough declarations discussing the technical feasibility of the necessary searches and reproducibility of the requested data must be accorded substantial weight pursuant to FOIA. *See* U.S.C. § 552(a)(4)(B). Again, Plaintiffs rely on Mr. Schnell in an attempt to discredit the Department's statements regarding the burden of their request. Yet, Mr. Schnell has never worked at the Department. Nor has he worked with the Department's database at issue. Mr. Schnell's declaration is therefore insufficient to rebut the Department's detailed declarations, which amply describe the burden of Plaintiffs' request.

Accordingly, the Department's motion for summary judgment should be granted, and Plaintiffs' cross motion for summary judgment should be denied.

**ARGUMENT**

I.    **The Court Should Grant Summary Judgment to the Agency on the Adequacy of its Searches, Which Were Reasonably Calculated to Uncover All Relevant Records**

The Department is entitled to summary judgment on the adequacy of its searches for responsive records because its detailed declarations demonstrate that the Agency conducted a reasonable search for an extract "of all information for deceased passport holders" responsive to Plaintiffs' FOIA request. *See Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) ("If an agency demonstrates that it has conducted a reasonable search for relevant documents, it … is entitled to summary judgment on this issue."). As detailed in Ms. Ballard's Declaration submitted with the Agency's opening brief, the Agency determined that it maintains passport information in two formats: (1) an electronic database called the Passport Information Electronic Records System ("PIERS"); and (2) paper records. Ballard Decl. ¶ 8. The Department then conducted a search for the extract requested by Plaintiffs by speaking with Agency personnel with subject matter expertise, including personnel from the Passport Services, Office of Modernization and Systems Liaison, and personnel in the Office of Consular Systems and Technology, about whether extracts were available for passport information maintained in either format. *Id.* ¶ 15. Department personnel indicated that the Agency does not possess or maintain an extract that would contain information for deceased passport holders in either paper or electronic format.[2] Ballard Decl. ¶ 15. The Department therefore did not run specific

---

[2] Plaintiffs claim that the Agency's response is conclusory, which "raises serious doubts as to the completeness of the [ ] search." Pls. MOL at 6. This is not so. The Agency has provided significant detail regarding why the requested extract does not currently exist and why the requested extract cannot be easily created. Ballard Decl. ¶ 10 (explaining the limitations of PIERS); Westmark Decl. ¶¶ 7-14 (same). This is sufficient to withstand summary judgment. *See Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206 (2d Cir. 2020) (affirming district court's holding that the agency did not violate FOIA by declining to conduct a search "based on sworn declarations from [agency] officials explaining why the agency would not have responsive records").

3

searches for the requested extracts, as "FOIA does not demand a search that would be futile." *NAACP Legal Defense & Educ. Fund, Inc. v. Dep't of Justice*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020) (internal quotation marks omitted); <u>Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency</u>, 877 F. Supp. 2d 87, 101 (S.D.N.Y. 2012) ("Because the agencies are more familiar with their work than the plaintiffs or the Court, they are entitled to some degree of deference regarding their determination of search locations.").

Although the Department determined that it did not possess or maintain the requested extract, the Department went further still by attempting to search for the underlying data that would comprise the requested extract.[3]  As outlined in the Agency's declarations, and as discussed further below, *see infra* p. 5-8, the Agency ultimately determined that searching for and producing the underlying data would impose an unreasonable burden on the Department that far exceeds the bounds of FOIA.  See *Halpern v. F.B.I.*, 181 F.3d 279, 288 (2d Cir. 1999).

Because the Department's detailed declarations demonstrate that its searches were "reasonably calculated to discover the requested documents," the Department has satisfied its burden on summary judgment.  See *Grand Cent. P'ship, Inc. v Cuomo*, 166 F.3d 473,489 (2d Cir. 1999); *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").

---

[3] Plaintiffs incorrectly assert that the Department "arbitrarily misconstrued the search request" by searching only for an "extract."  Pls. MOL at 15-16.  The Department's declarations make clear, however, that extensive work was undertaken to determine whether the Department could identify and produce the data itself, and not just an extract.  *See* Suppl. Ballard Decl. ¶¶ 7-16; Westmark Decl. ¶¶ 7-15.

4

## II. Producing the Data Underlying Plaintiffs' Requested Extract Would Impose an Enormous Burden on the Agency that Exceeds FOIA's Requirements

Plaintiffs maintain that extracting the requested passport data from PIERS "would be well within the requirements of FOIA." Pls. MOL at 16. Plaintiffs are incorrect. It is well settled that "an agency need not respond to a request that is so broad as to impose an unreasonable burden on the agency, such as one which require[s] the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*, 2024 WL 476304, at *5 (S.D.N.Y. Feb. 7, 2024) (internal quotation marks omitted). Here, the Department's detailed declarations make clear that searching for and processing the vast number of requested records would impose an unreasonable burden upon the Department.

As an initial matter, the digitized passport records Plaintiffs seek are not readily reproducible. Plaintiffs rely on Mr. Schnell's opinion that "the ability to export the results of database queries is common to all modern databases." Pls. MOL at 17 (citing Schnell Decl. ¶19). Yet, Mr. Schnell lacks first-hand experience with PIERS and he incorrectly assumes that data can be retrieved in the same manner as any other database. *See* Westmark Decl. ¶ 8. As explained by Ms. Westmark:

> The data that PIERS retrieves and outputs is stored as "images" because the Department scanned and imported the actual physical copies of passport records. Each saved image of a passport record has a unique image identification number, which PIERS uses to retrieve the appropriate image to display to the user. Because of this limitation, the only way for the Department to compile and create an extract, or to retrieve the underlying data that would comprise an extract, would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and also verification of the information in every record.

*Id.* ¶¶ 9-10. As further explained by Ms. Ballard and Ms. Westmark, searching PIERS would therefore require the Department to devote "significant manpower" to researching, reviewing,

5

and validating the results" of its searches due to the size of the dataset.  *See* Supp. Ballard Decl. ¶ 9; Westmark Decl. ¶ 10 ("This process would require at least a handful of technical subject matter experts and potentially hundreds of hours. . . This level of support is needed when retrieving large data sets as it is known that on occasion the results returned are not all encompassing, even for a backend user.").  Moreover, Ms. Westmark indicated that her division would be required to hire additional personnel to ensure that they could still handle their regular duties while responding to Plaintiff's request.  Westmark Decl. ¶ 10.  This is therefore not a case that merely involves "sorting a pre-existing database."  *See* Pls. MOL at 16-17.  Nor is it possible to simply use "standard database query functions" and export the results as Plaintiffs suggest.  *Id.*

Moreover, Ms. Ballard indicated that responding to Plaintiffs' request would require the Department to search for and collect "hundreds of millions" of paper passport records.  Suppl. Ballard Decl. ¶¶ 8-9; *see also id.* ¶ 9 n.1 (noting that between October 2022 and September 2023 alone, the Department issued over 24 million passport books and cards).  A search of the Department's paper records would require the Department to manually review records stored in boxes at the Washington National Records Center of the U.S. National Archives and Records Administration.  *Id.*  The burden involved in this manual review is magnified by the fact that the Department's paper passport records are stored in boxes that are generally not organized by the date of the recordholder's birth or death.  *Id.*  A Department employee would therefore be required to open all boxes and review each piece of paper inside.  *Id.*  Ms. Ballard estimated that at minimum, it would take "dozens of individuals spending hundreds of hours each" to complete the Department's search for responsive paper records.  *Id.*

In addition to the burden involved in searching for responsive records, the Department would also need to undertake significant efforts to process and produce the hundreds of millions

of requested records.  As explained by Ms. Ballard, the Department would need to digitize countless responsive paper records and manually verify any data retrieved in PIERS.  Supp. Ballard Decl. ¶¶ 11-12.  The Department would also need to review each record for third-party information to ensure compliance with FOIA and other applicable statutes.  *Id.* ¶ 14 ("[P]assport records frequently contain information belonging to individuals other than the recordholder; they can contain information about their family members, … some of whom still may be alive and whose information should remain protected.").  Ms. Ballard estimated that it would take her division "decades" to complete this work, even if they were focused solely on Plaintiffs' request.  *Id.* ¶ 15.  This far exceeds the bounds of what is required under FOIA.  *See, e.g.*, *Int'l Counsel Bureau v. U.S. Dep't of Defense*, 723 F. Supp. 2d 54, 60 (D.D.C. 2010) (agreeing with agency that "enlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose . . .an undue burden"); *People for American Way Foundation v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding manual search of 44,000 records which was estimated to take 25,000 hours to be unduly burdensome).

Plaintiffs maintain, however, that the Department should easily be able to satisfy their request because the Department previously provided "an extract of all available specific digital U.S. Passport data" to the U.S. Census Bureau.  Pls. MOL at 13-14.  Plaintiffs' argument misses the mark.  When the Department exported data from PIERS to the Census Bureau, it did not verify the accuracy of the data prior to sharing it because the information was not being shared with the public, but rather with another department within the federal government.  Ballard Supp. Decl. ¶ 12 n.4 ("[T]he data transferred to Census was subject to the same limitations as the data that currently exists in PIERS."); Ballard Decl. ¶ 11.  Furthermore, sharing digitized bulk data with the Census Bureau did not involve searching for and processing paper records.  Supp.

Ballard Decl. ¶ 12 & n.4. For this reason, the burden involved in sharing the data with the Census Bureau is not comparable to what would be involved in satisfying Plaintiffs' request.

Finally, Plaintiffs suggest that if the Department is concerned with the inaccuracies of its data, the Department should simply "include a disclaimer" when it produces its records. As detailed by Ms. Ballard, however, the Agency has significant concerns with releasing inaccurate personal information of passport holders. *See* Supp. Ballard Decl. ¶ 13. As explained by Ms. Ballard:

> Verification of passport holder information is vital so that the Department does not inadvertently produce personal identifying information about recordholders who are not in fact deceased. For example, due to the fact that many records were manually entered into PIERS, it is possible that a search for "all individuals born on January 1, 1902" brings back the records of an individual who was actually born on "January 1, 1992" (but the individual's birthdate was incorrectly entered into PIERS). Were the Department to produce the records of all individuals captured by this search without verification, the individual born in 1992, who may still be living, would have their very personal information—including their passport and social security numbers—produced by the Department. It is also possible that the above-referenced search could include a deceased individual whose data was inaccurately entered. In that scenario, if a social security number is incorrect, it may implicate a person who is not deceased. Therefore, the Department's concerns about releasing personal information of living passport holders would not be allayed by simply providing Plaintiffs with a disclaimer that the data could contain inaccuracies.

*Id.* ¶ 13.

Regardless, even if the Agency did not need to verify the accuracy of the personal information requested, the Department would still be severely burdened by the work involved with searching for the requested data, as described previously. *See supra* p. 6-7 (searching paper records would take dozens of individuals hundreds of hours and searching PIERS would require the Department to hire additional personnel). The Court should therefore find that the Department appropriately determined that responding to Plaintiffs' request would impose an unreasonable burden on the Department, far beyond the bounds of what FOIA requires.

### III. Plaintiffs Fail to Rebut the Presumption of Good Faith Accorded to the Agency's Declarations

Plaintiffs' speculative claims regarding the capabilities of the PIERS database are insufficient to impugn the adequacy of the Department's search or the Department's analysis of the burden imposed by Plaintiffs' requests. *See Grand Cent. P'ship*, 166 F.3d at 489 (noting that agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents"). Plaintiffs rely on the declaration of Mr. Schnell, Plaintiffs' proffered "database expert," who raises questions concerning PIERS' capabilities based on his experience with other databases. *See* Schnell Decl. ¶¶ 13-20. However, the questions raised by Mr. Schnell are insufficient to create a genuine dispute of material fact that would preclude a grant of summary judgment in Defendant's favor.

Notably, FOIA requires courts to "accord *substantial weight* to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility[.]" 5 U.S.C. § 552(a)(4)(B) (emphasis added); *see, e.g., Long v. Immigr. & Customs Enf't,* 149 F. Supp. 3d 39, 58 (D.D.C. 2015) (noting that a declaration relating to the technical feasibility and reproducibility of records "must" be accorded "substantial weight). This is particularly true where, as here, the Agency's declarant, Ms. Westmark, attests to the technical capabilities of a system based on her "specific knowledge of and experience with" the database in question. *See Long*, 149 F. Supp. 3d at 57; Westmark Decl. ¶ 3.

In contrast to Ms. Westmark, Mr. Schnell is not a Department employee, and he does not aver that he has ever worked at the Department. *See* Schnell Decl. ¶¶ 2-8. Nor does he attest to any personal knowledge of or familiarity with the record systems maintained by the Department. Rather, he incorrectly assumes that PIERS operates like any other database, Schnell Decl. ¶¶ 13-

9

20, which is insufficient "to overcome or raise questions about [the agency's] declaration." *See Long*, 149 F. Supp. 3d 39 at 58 ("[A] plaintiff must offer more than generalities about technical capabilities of generic systems." (internal quotation marks omitted)); *see also* Westmark Decl. ¶ 8 ("While the Schnell Declaration might correctly explain how, in a typical database a user can normally create a query and extract data from a database…it incorrectly assumes that this is how data is retrieved by PIERS.").

Accordingly, Mr. Schnell's declaration has no probative value as to the adequacy of the agency's search, the capabilities of the PIERS system, or the burden that Plaintiffs' request would impose on the Agency. *See Long*, 149 F. Supp. 3d at 57-58 (D.D.C. 2015) (noting that plaintiff's expert, "limited by his lack of first-hand experience," could not rebut the agency's declaration); *In't Veld v. Dep't of Homeland Sec.*, 589 F. Supp. 2d 16, 17-21 (D.D.C. 2008) ("Because the expert's affidavit is based on the erroneous assumption that DHS's data systems are the same as the airlines' data systems and because DHS submitted detailed affidavits describing an adequate search, summary judgment will be granted in favor of DHS."); *Judicial Watch v. Dep't of Commerce*, 337 F. Supp. 2d 146, 161 (D.D.C. 2004) (finding that plaintiff's attempt to discredit FOIA search with its own declaration was "insufficient to overcome the personal knowledge-based" declarations submitted by the agency).

## CONCLUSION

For the foregoing reasons, the Court should grant the Department's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated: June 27, 2024
      New York, New York

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York
                *Attorney for Defendant*

By:    /s/ *Rebecca L. Salk*
        REBECCA L. SALK
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel: (212) 637-2614
        E-mail: rebecca.salk@usdoj.gov