UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RECLAIM THE RECORDS and ALEC FERRETTI, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br> Defendant. | 23 Civ. 1650 (JPC) |

## SUPPLEMENTAL DECLARATION OF REGINA L. BALLARD

Pursuant to 28 U.S.C. § 1746, I, Regina L. Ballard, do hereby make the following declaration under penalty of perjury:

1.  I am the Division Chief for the Office of Records Management, Records Review and Release Division within Passport Services, Bureau of Consular Affairs of the United States Department of State (the "Department" or "State"), a position in which I have served since January 2014.  I am the Department official charged with the responsibility of overseeing the release of passport records and information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Prior to serving in this capacity, I served as the Team Lead for the Office of Legal Affairs and Law Enforcement Liaison.

2.  I am familiar with plaintiffs Alec Ferretti's and Reclaim the Records' (collectively, "Plaintiffs") FOIA request bearing tracking number F-2021-07839 and subsequently FL-2023-00054, which is the subject of the above-captioned litigation.  I make the following statements based upon my personal knowledge, as well as upon information acquired by me in the course of my official duties.

1

3.	The core responsibilities of the Office of Records Management include: (1) responding to passport records requests made by the public (under the FOIA and the Privacy Act), by state, local, and federal agencies, by other government agencies, by foreign governments, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) reviewing and determining the release of passport records and information; (3) general management of passport records; and (4) the archiving and retrieval of those records.

4.	This declaration supplements the declaration I signed in support of the Department's motion for summary judgment filed on February 1, 2024, *see* ECF No. 29, and provides additional details on the burden it would impose on the Department to produce passport records as requested by Plaintiffs.

I.	**PLAINTIFFS' FOIA REQUEST AND THE DEPARTMENT'S RESPONSE**

5.	As noted in my prior declaration, Plaintiffs' FOIA request sought "an extract of all information for deceased passport holders maintained in the passport database." ECF No. 35-1.

6.	As I also explained in my prior declaration, the Department does not possess the extract that Plaintiffs seek. *See* ECF No. 29, ¶¶ 6, 8–10. The Department, after engaging in extensive back-and-forth with Plaintiffs for several months, formally informed Plaintiffs of its determination on January 30, 2024. *See* ECF Nos. 37 at 2–3, 29-2.

II.	**SUBSTANTIAL HARDSHIP IN SEARCHING FOR AND COLLECTING HUNDREDS OF MILLIONS OF PASSPORT RECORDS**

7.	To the extent Plaintiffs are asking the Department to produce the underlying data that would comprise such an extract, *see* ECF No. 37 at 11, their request will impose an extreme burden on the Department in two respects.

8. First, it would require the Department to search for and collect hundreds of millions of passport documents, both electronic and paper, which would itself be extremely burdensome.

9. Because Plaintiffs seek passport records that are over a hundred years old, the Department estimates that hundreds of millions[1] of the documents sought have not been digitized and are therefore not retrievable from the Department's Passport Information Electronic Records System ("PIERS"). The Department's relevant paper records would instead need to be retrieved from the Washington National Records Center (the "Records Center") of the U.S. National Archives and Records Administration ("NARA"). The boxes that store paper passport records are generally not organized by the date of the recordholder's birth or death. *See* ECF No. 29, ¶ 9. Accordingly, Department or NARA employees would be required to manually examine hundreds of millions of paper documents to determine whether any individual was deceased or born in 1923 or earlier. The amount of manpower and time it would take to conduct this type of manual searching is difficult to estimate due to the volume involved, but at a minimum, it would take dozens of individuals spending hundreds of hours each.

10. Searching for relevant passport records that have been digitized would also impose an unreasonable burden on the Department. As explained in my initial declaration,

---

[1] As noted in my prior declaration, between October 2022 and September 2023 alone, the Department issued over 24 million passport books and cards. *See* ECF No. 29, ¶ 18. When an individual applies for a passport, the Department retains their application, evidence of citizenship, correspondence between the applicant and relevant U.S. Government officials, as well as any other relevant document. In other words, for each passport applicant, there are typically at least two or three passport documents. According to the U.S. Census Bureau, the U.S. population in 1920 was 106,021,568. *See* United States Census Bureau, Historical Population Change Data (1910-2020), *available at* https://www.census.gov/data/tables/time-series/dec/popchange-data-text.html. Even assuming only 5% of the population had applied for a passport in 1920, the Department would have well over 10,000,000 documents from that year alone.

3

passport records that have been digitized are retrievable via PIERS.[2] Searching for the requested data, however, is not straightforward. To the contrary, it would require significant manpower devoted to "researching, reviewing, and validating the results" because "it is known that on occasion the results returned in are not all-encompassing," Declaration of Sharon Westmark ("Westmark Decl.") ¶ 11, and this is a virtual certainty where hundreds of millions of documents are likely concerned. *See supra* ¶ 9 n.1.

### III. SUBSTANTIAL HARDSHIP IN PRODUCING HUNDREDS OF MILLIONS OF PASSPORT RECORDS

11. Second, even assuming the searches described above were realistic and feasible, it would also place an extreme burden on the Department to process and produce those hundreds of millions of documents.

12. The first step involved in processing and producing any paper passport record yet to be digitized would be to copy it. An individual's passport records typically consist of their passport application, evidence of citizenship, and correspondence between them and relevant U.S. Government officials. While the application itself is typically two pages, supporting documentation and other records can range from a few to more than twenty pages.

13. The first step involved in processing and producing any electronic passport record would be to verify the information retrieved through PIERS. Most electronic passport data that would be responsive to this request had been entered manually and remains unverified; prior to relying on or using that data, an employee must verify it against any actual corresponding

---

[2] Because the Department centrally retrieves electronic passport records from one location, i.e., PIERS, there is no other electronic recordkeeping system on which a search might reasonably result in the discovery of the requested information.

electronic record seen in PIERS or any corresponding paper record and correct any errors.[3] Should an electronic record be deficient (*e.g.*, illegible), a Department employee would need to coordinate with the Records Center to manually search boxes stored there to locate the relevant paper records using any available information in PIERS. Verification of passport holder information is vital so that the Department does not inadvertently produce personal identifying information about recordholders who are not in fact deceased. For example, due to the fact that many records were manually entered into PIERS, it is possible that a search for "all individuals born on January 1, 1902" brings back the records of an individual who was actually born on "January 1, 1992" (but the individual's birthdate was incorrectly entered into PIERS). Were the Department to produce the records of all individuals captured by this search without verification, the individual born in 1992, who may still be living, would have their very personal information—including their passport and social security numbers—produced by the Department. It is also possible that the above-referenced search could include a deceased individual whose data was inaccurately entered. In that scenario, if a social security number is incorrect, it may implicate a person who is not deceased. Therefore, the Department's concerns about releasing personal information of living passport holders would not be allayed by simply providing Plaintiffs with a disclaimer that the data could contain inaccuracies.

---

[3] Given the volume of records that exist—a number that increases daily—the Department generally only corrects data in PIERS as needed. For this reason, when the Department shared information with the Census Bureau from PIERS via a bulk data dump, *see* Ballard Decl., ECF No. 29 ¶ 11, the data transferred to Census was subject to the same limitations as the data that currently exists in PIERS. In other words, the Census Bureau would have needed to verify all of the information it received from the Department. The Department did not verify the data prior to sharing it with the Census Bureau because, among other reasons, the information was being shared within the federal government pursuant to an executive order and not with the general public. Moreover, the data dump for the Census Bureau did not involve paper records, and thus the burden involved would have been a completely different nature compared to here.

14. Next, any responsive passport record identified for production would need to be reviewed for any third-party information and redacted appropriately to ensure that the Department is compliant with both FOIA and other applicable statutes such as the Privacy Act. This is necessary because passport records frequently contain information belonging to individuals other than the recordholder; they can contain information about their family members, for instance, some of whom may still be alive and whose information should remain protected.

15. As I explained in my previous declaration, in the most optimistic of scenarios, satisfying Plaintiffs' request would require decades of work by my division even assuming this request becomes the only matter my division is responsible for.  *See* ECF No. 29, ¶ 24.

## IV. CONCLUSION

16. In conclusion, the Department, relying on the subject matter expertise of relevant employees, including myself, confirmed that the Department does not possess an extract responsive to Plaintiffs' request.  Furthermore, to produce a copy of the records underlying such an extract would work an extreme burden on the Department.

Executed by me on June  27 , 2024, Washington, D.C.

*Regina L. Ballard*
_____
Regina L. Ballard