UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RECLAIM THE RECORDS and ALEC FERRETTI, <br><br>  Plaintiffs, <br><br>  v. <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br>  Defendant. | Civ. No. 23-01650 (JPC) |

## REPLY DECLARATION OF SHARON WESTMARK

Pursuant to 28 U.S.C. § 1746, I, Sharon Westmark, do hereby make the following declaration under penalty of perjury:

1. I am the Division Chief of the Production Services Design and Development Division ("PSDD") within Consular Systems and Technology, Bureau of Consular Affairs of the United States Department of State (the "Department" or "State"), a position in which I have served since November 2016. I am the Department official charged with overseeing computer application software projects that maintain and enhance software applications used to produce passports and visas and provide American citizen services at posts. Prior to serving in this capacity, I served as the Senior Advisor within Consular Systems and Technology, Bureau of Consular Affairs of the Department.

2. The core responsibilities of PSDD include overseeing computer application software projects that maintain and enhance software applications used to produce passports and visas as well as providing American citizen services at overseas posts.

3.  I am familiar with the FOIA request of plaintiffs Alec Ferretti and Reclaim the Records (collectively, "Plaintiffs") bearing FOIA request tracking number F-2021-07839 and subsequently FL-2023-00054, which is the subject of the above-captioned litigation. I am also familiar with the declaration of Ron Schnell, which Plaintiffs filed with their opposition to Defendant's motion for summary judgment. ECF No. 36 (the "Schnell Declaration"). Finally, I am familiar with the Department's passport records and its Passport Information Electronic Records System ("PIERS"), including its technical capabilities and how it is used by the Department to retrieve its electronic passport records. I make the following statements based upon my personal knowledge, as well as upon information acquired by me in the course of my official duties, focusing solely on electronic passport records at issue.

### I.   PLAINTIFF'S FOIA REQUEST AND PASSPORT RECORDS

4.  I understand that Plaintiffs' FOIA request sought "an extract of all information for deceased passport holders maintained in the passport database." ECF No. 35-1.

5.  I further understand that as part of its search for records potentially responsive to the request, the Department considered how passport records in either paper or electronic form are stored and accessed.

6.  PIERS can retrieve and display the Department's electronically stored passport records.

7.  To retrieve a passport record in PIERS, a Department employee must enter an individual's personal identifiable information ("PII")—such as name, date of birth, Social Security Number, place of birth, date of death, or place of death. The search in PIERS would yield up to a certain number of results, based on the criteria selected. The generated output is a

list of individuals, including a link to the respective images of the records searched for. At most, a search in PIERS can yield 250 results at a time.

8. While the Schnell Declaration might correctly explain how, in a typical database, a user can normally create a query and extract data from a database so long as the data is stored in database columns and fields, it incorrectly assumes that this is how data is retrieved by PIERS.

9. The data that PIERS retrieves and outputs is stored as "images" because the Department scanned and imported the actual physical copies of passport records. Each saved image of a passport record has a unique image identification number, which PIERS uses to retrieve the appropriate image to display to the user.

10. Because of this limitation, the only way for the Department to compile and create an extract in PIERS, or to retrieve the data that would comprise an extract, would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and also verification of the information in every record. *See* Supplemental Declaration of Regina L. Ballard ("Supp. Ballard Decl."), ¶ 13. In addition to the hours that Passport officers would need to spend verifying the information, given the number of passport records that exist, this process would require at least a handful of technical subject matter experts and potentially hundreds of hours devoted to researching, reviewing, and validating the results retrieved. This level of support is needed when retrieving large data sets as it is known that on occasion the results returned are not all-encompassing, even for a backend user. My division would also be required to hire additional personnel to ensure that its regular responsibilities can continue to be met while responding to this request.

11. In order to search for a passport record in PIERS currently, the system user must enter a person's PII. The PIERS application references databases when a front-end user enters this information to retrieve the relevant passport data and images.

12. A record is associated with a unique data ID called a "PRISM file number" in the backend, which is how the respective image is referenced and returned in PIERS. More specifically, PIERS is the front end to a series of databases, with the following data distributed across them, including: a person's name, Social Security Number, date of birth, place of birth, address, e-mail address, phone number, and PRISM file number. When a system user searches by name in PIERS, for instance, PIERS searches for all relevant PRISM file numbers based upon the search criteria entered, and uses the PRISM file numbers to find the relevant file shares/databases to retrieve the image of the passport records.

13. There is a unique PRISM number for each scanned document, so there could be multiple PRISM numbers associated with a recordholder, who could have any number of passport records. Due to data available to PIERS, the Department is unable to verify the accuracy of all the PRISM file numbers associated with the passport records. A Passport Specialist would need to verify any data from PRISM file numbers. Consequently, as explained by Ms. Ballard, the Department does not rely on PIERS as a database of verified passport records. *See* Supp. Ballard Decl. ¶ 13. Instead, as also noted by Ms. Ballard, the Department ultimately relies on the information in the actual electronic or paper passport record. *Id.* ¶ 13–14.

14. Because PIERS utilizes a series of databases housing different aspects of this information, the "database queries" described in the Schnell Declaration, even if feasible, would generate a result set that Department personnel would have to separately validate and verify in

any event.  Consequently, an extract of the Department's passport records would ultimately need to be manually derived from either the paper or electronic passport records.  *See id.*

15. In other words, not only is there nothing the Department has that is responsive to the Plaintiffs' request for an extract, but even attempting to generate an extract, or retrieving the data that comprises an extract would work a very substantial hardship on my division and the Department.

*****

Executed by me on June 27, 2024, Washington, DC

*Sharon Westmark*
_____
Sharon Westmark