UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                            :

RECLAIM THE RECORDS and ALEC FERRETTI,   :

                     Plaintiffs,                                :

                                                                        :               23 Civ. 1650 (JPC)

                -v-                                   :

                                                                          :               OPINION AND ORDER

UNITED STATES DEPARTMENT OF STATE,       :

                     Defendant.                              :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Reclaim the Records is a nonprofit organization—of which Plaintiff Alec Ferretti is a board member—devoted to acquiring genealogical and archival data from government sources and making it available to the public at no cost. On June 28, 2021, Plaintiffs submitted a request to Defendant U.S. Department of State under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of all information associated with deceased passport holders. After not receiving a response from the Department, Plaintiffs brought this action to compel production. Before the Court are the parties' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant argues that its search was adequate and that, even it could cull its files in the manner advocated by Plaintiffs to create an extract of the responsive records, it need not undertake that monumental and onerous task. The Court agrees. Thus, and for the reasons that follow, Defendant's motion is granted, and Plaintiffs' motion is denied.

## I. Background

A.   **Facts**[1]

The Department of State maintains all passport records for the United States. Dkt. 29 ("Ballard Decl.") ¶ 8. Those records come in two formats: paper records and electronic files. *Id.* The physical records are stored at the Washington National Records Center of the U.S. National Archives and Records Administration ("NARA"), and the electronic records are kept in a database called the Passport Information Electronic Records System ("PIERS"). *Id.* ¶¶ 8-10. The data in PIERS are "stored as 'images' because the Department scanned and imported the actual physical copies of passport records. Each saved image of a passport record has a unique image identification number, which PIERS uses to retrieve the appropriate image to display to the user." Dkt. 42 ("Westmark Decl.") ¶ 9. The "unique data ID" associated with each record in PIERS is "called a 'PRISM file number' . . . , which is how the respective image is referenced and returned in PIERS." *Id.* ¶ 12. The NARA records and the digitized records in PIERS are imperfect matches, however—not all passport records have been digitized, and some paper records no longer exist. Ballard Decl. ¶ 10.

PIERS serves as the front-end interface to a series of databases, each containing a subset of all information kept in a recordholder's file, thereby allowing users to retrieve passport data and images. Westmark Decl. ¶¶ 11-12. Such information includes a passport holder's name, Social Security Number, date and place of birth, contact information, and PRISM number. *Id.* ¶ 12. But the file does not include any information about whether the individual is deceased. Ballard Decl. ¶ 10. And because each scanned and digitized document is assigned a different PRISM number,

---

[1] The following facts are drawn from the parties' affidavits and declarations, which courts in this Circuit regularly accept in FOIA cases in lieu of Local Civil Rule 56.1 statements. *See Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994).

2

one recordholder could be associated with multiple unique PRISM numbers.  Westmark Decl. ¶ 13.

To retrieve a passport record in PIERS, a user inputs an individual's personal identifiable information ("PII")—such as name, date of birth, or Social Security Number.  *Id.* ¶ 7; Ballard Decl. ¶ 10.  PIERS then generates a list of responsive individuals with links to the respective images of the records.  Westmark Decl. ¶¶ 7, 9-12.  A maximum of 250 results are returned for each search, even if the volume of responsive records exceeds that number.  *Id.* ¶ 7; Ballard Decl. ¶ 10.

Separately from any passport data, the State Department also maintains Consular Reports of Deaths of a U.S. Citizen Abroad ("CRDAs").  Ballard Decl. ¶¶ 12, 14.  These reports are created when a U.S. citizen passes away while in another country and the passing is reported to a U.S. embassy or consulate.  *Id.* ¶ 12.  While CRDAs typically include information about the citizen's birth date and circumstances surrounding the death, they may not contain passport data.  *Id.*  As with the passport data, the State Department stores CDRAs in paper and electronic format.  *Id.*  While not all paper records of CDRAs have been digitized, those that have been are accessible through PIERS.  *Id.* ¶¶ 13-14.

On June 28, 2021, Ferretti and Reclaim the Records together submitted a FOIA request to the State Department for "an extract of all information for deceased passport holders maintained in the passport database."  Dkt. 35 ("Rankin Decl."), Exh. A ("FOIA Request").  Plaintiffs limited their request to deceased passport holders because they recognized that "information on living passport holders may not be disclosed under FOIA."  *Id.*  Plaintiffs also asked the Department to identify responsive records by using a proxy for death—100 years or more since birth.  *Id.*  They therefore requested "data for all people whose date of birth is on or before June 28, 1920 or the

3

date of processing of this request,[2] whichever is later." *Id.* All data was requested in electronic format. *Id.*

B.  **Procedural History**

After twenty-one months without a response, Plaintiffs initiated this suit on February 27, 2023, seeking to compel production of the FOIA Request. Dkt. 1 ("Compl."). The parties initially sought to resolve the dispute outside of court. *See* Dkt. 11. During the ensuing discussions, Plaintiffs provided Defendant with copies of certain of the Department of State's own documents. First, Plaintiffs sent Defendant a copy of a Privacy Impact Assessment for PIERS, dated October 2020. Rankin Decl., Exh. C ("PIA"). The Assessment provides technical information about PIERS and how the application addresses privacy concerns. *Id.* Days later, Plaintiffs sent Defendant a Memorandum of Understanding between the State Department and the U.S. Census Bureau, dated January 3, 2020. Ballard Decl. ¶ 11; *id.*, Exh. 3 ("MOU"). This memorandum describes an agreement through which the State Department provided "an extract of all available specified digital U.S. passport data" to the Census Bureau for it "to use the data for statistical purposes only." MOU §§ (3), (7)(A); *see* Ballard Decl. ¶ 11.

The parties were ultimately unable to resolve the matter without the Court's intervention. Dkt. 17. On January 30, 2024, Defendant responded to the FOIA Request, advising Ferretti that it had "located no responsive records subject to the FOIA." Ballard Decl., Exh. 2. Defendant thereafter moved for summary judgment on February 1, 2024. Dkt. 28; Ballard Decl.; Dkt. 30

---

[2] This second portion of the FOIA Request, seeking "data for all people whose date of birth is on or before . . . the date of processing of this request," FOIA Request, presumably is a typographical error as this request, read literally, would be unlikely to capture predominantly deceased individuals. The Court assumes that Plaintiffs meant to request data for persons whose date of birth is 100 years or more prior to the date the Department processes their request. *See* Dkt. 37 ("Pls. Opp. & SJ Br.") at 2 (appearing to clarify this error in describing Plaintiffs' request).

("Deft. SJ Br."). On March 28, 2024, Plaintiffs opposed Defendant's motion and filed their own cross-motion for summary judgment. Dkt. 34; Rankin Decl.; Dkt. 36 ("Schnell Decl."); Pls. Opp. & SJ Br. Defendant filed their opposition to Plaintiffs' motion and reply in support of its motion on June 27, 2024. Dkt. 40 ("Deft. Reply & Opp. Br."); Dkt. 41 ("Ballard Suppl. Decl."); Westmark Decl. Plaintiffs filed a reply in support of their motion on August 12, 2024. Dkt. 45 ("Pls. Reply Br.").

## II. Legal Standard

"[S]ummary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). "As with all motions for summary judgment, summary judgment in a FOIA action should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012); *accord N.Y. Times Co. v. U.S. Dep't of Just.*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." (alteration adopted and internal quotation marks omitted)). Agency affidavits are "accorded a presumption of good faith," which "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (internal quotation marks omitted). To establish a basis for summary judgment, the affidavits must "contain reasonable specificity of

detail rather than merely conclusory statements," and must not be "called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.* at 478 (emphasis and internal quotation marks omitted). Thus, where the agency's "submissions are adequate on their face, district courts may forgo discovery and award summary judgment on the basis of affidavits." *N.Y. Times Co. v. U.S. Dep't of Just.*, 550 F. Supp. 3d 26, 31 (S.D.N.Y. 2021) (internal quotation marks omitted). And the non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

As noted above, the parties have cross-moved for summary judgment. The Court "need not enter judgment for either party" when cross-motions for summary judgment are filed. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Generally, the Court evaluates each cross-motion independently of the other, considering the facts in the light most favorable to the non-moving party. *Id.* "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

### III.  Discussion

The State Department's declarations establish that the agency has conducted an adequate search in response to the FOIA Request, and Plaintiffs have neither impugned those declarations nor otherwise come forward with tangible evidence showing that summary judgment is inappropriate. To the extent that Plaintiffs argue Defendant should generate a responsive dataset, creating such an extract would impose an undue burden on the agency. Defendant therefore is entitled to summary judgment.

A.      **Adequacy of Search**

   1.      **The Agency's Burden**

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). FOIA only requires agencies to "make *reasonable* efforts to search for the records in electronic form or format"—not any and all efforts to do so. *Id.* § 552(a)(3)(C) (emphasis added). To be sure, "Congress, in imposing this search requirement, recognized that 'computer records found in a database rather than in a file cabinet may require the application of codes or some form of programming' for their retrieval." *Am. C.L. Union Immigrants' Rts. Project v. U.S. Immigr. & Customs Enf't*, 58 F.4th 643, 662 (2d Cir. 2023) (alteration adopted) (quoting H.R. Rep. No. 104-795, at 22 (1996)). But "the time and resources that an agency must commit to retrieve electronic records may be pertinent to identifying the efforts that can reasonably be expected to retrieve responsive agency records." *Id.* Agencies need not "take extraordinary measures to find the requested records." *Garcia v. U.S. Dep't of Just., Off. of Info. & Priv.*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002).

"If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Id.* at 366; *accord Carney*, 19 F.3d at 812 (explaining that an agency prevails on summary judgment in a FOIA case by "showing that its search was adequate"). The agency can meet this burden by "supplying facts indicating that [it] has conducted a thorough search," even when that search was fruitless. *Carney*, 19 F.3d at 812. What matters is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *Grand Cent. P'ship*, 166 F.3d at 489 (internal quotation marks omitted). Adequacy is

"measured by the reasonableness of the effort in light of the specific request," and the agency responds adequately when "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Whitaker v. Dep't of Com.*, 970 F.3d 200, 206-07 (2d Cir. 2020) (internal quotation marks omitted).

The Department of State—primarily through the declaration of Regina Ballard—has met its burden of showing that it conducted an adequate search. Ms. Ballard is the Division Chief for the Office of Records Management, Records Review and Release Division, within the State Department's Bureau of Consular Affairs. Ballard Decl. ¶ 1. As the head of the office responsible for all passport record requests made by the public or otherwise, she has intimate knowledge regarding "the archival and retrieval of those records." *Id.* ¶ 3. Ms. Ballard "inquired with Department personnel with subject matter expertise, including in the Office of Consular Systems and Technology, concerning the Department's access to and use of its passport records and CDRAs, as well as the identification of all files likely to contain records that are responsive to the FOIA [R]equest." *Id.* ¶ 15. After identifying all files likely to contain responsive records, no such records were found. *Id.* Ms. Ballard additionally confirmed that "the Department has never created and does not currently possess or maintain an extract of either its paper or electronic passport records with the parameters specified in the FOIA [R]equest." *Id.* "Considering her significant personal knowledge and experience with State Department recordkeeping and retrieval practices, Ms. Ballard's attestation" that the Department has never possessed or maintained the record sought "is entitled to significant weight." *Reclaim the Recs. v. U.S. Dep't of State*, No. 23 Civ. 1529 (VEC), 2024 WL 3938296, at *3 (S.D.N.Y. Aug. 26, 2024).

Moreover, the "passport data maintained by the Department does not contain information about whether an individual is deceased." Ballard Decl. ¶ 10. So to the extent that Plaintiffs seek

8

"all information for deceased passport holders," FOIA Request, Defendants lack the capability to cull their records by that search parameter. Locating responsive records is not any more feasible with respect to Plaintiffs' alternative request for "data for all people whose date of birth is on or before June 28, 1920." *Id.* As Ms. Ballard also explained, "PIERS does not permit a system user to extract passport data for persons born or deceased from a specific date to another specific date, and that functionality has never been available to the Department through PIERS." Ballard Decl. ¶ 10. In other words, Defendant could not extract all records with dates of birth from the earliest date recorded to a date 100 years in the past—it may only search for records that match a singular date. *Id.* Ms. Ballard's description of the search conducted by the Department, along with her detailed description of PIERS's technical limitations, sufficiently establishes the adequacy of Defendant's search.

### 2. Plaintiffs' Rebuttal

"'When an agency has satisfied its burden of showing that its search was adequate,' the burden shifts to the plaintiff to 'show either bad faith sufficient to impugn the agency's affidavits or to provide some tangible evidence that summary judgment is otherwise inappropriate.'" *Reclaim the Recs.*, 2024 WL 3938296, at *5 (alterations adopted) (quoting *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 651); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) ("Summary judgment is inappropriate where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.").

Plaintiffs lodge three general complaints about the adequacy of the Department's search, none of which rebut Defendant's showing of adequacy. First, Plaintiffs argue that Defendant "failed to conduct relevant available database searches." Pls. Opp. & SJ Br. at 6-8. Second, they

argue that Defendants "may not rely on the ordinary user restrictions of the Department database to deny Plaintiffs' Request." *Id.* at 8-11. And third, Plaintiffs take issue with Defendant's search for a preexisting compilation of records, instead of extraction of data from PIERS responsive to the request. *Id.* at 11-12. At bottom, Plaintiffs' objections to Defendant's search all operate from the assumption that the State Department maintains a database of passport records that can be queried with relative ease. To support these arguments, and others that are addressed at *infra* III.B, Plaintiffs have submitted the declaration of Ron Schnell—a Managing Director at Berkeley Research Group who purportedly has expertise in computer databases, Schnell Decl. ¶¶ 2-8. Plaintiffs rely heavily on Mr. Schnell's declaration to support their otherwise bald assertion "that it would not be burdensome for the Government to retrieve the records as requested by the Plaintiff[s]." Pls. Opp. & SJ Br. at 10 (quoting Schnell Decl. ¶ 30).

As an initial matter, the Court agrees with the Honorable Jesse M. Furman and the Honorable Valerie E. Caproni who—in recent decisions involving the same parties, the same purported expert, and nearly identical declarations—explained why Mr. Schnell's declaration has limited value to the Court. *See Reclaim the Recs. v. U.S. Dep't of State*, No. 23 Civ. 1471 (JMF), 2024 WL 3728979, at *6 (S.D.N.Y. Aug. 7, 2024); *Reclaim the Recs.*, 2024 WL 3938296, at *8. As Judge Furman explained, Mr. Schnell does not work at the State Department; he does not claim to have ever worked there; his understanding of PIERS stems entirely from Ms. Ballard's declaration, the Privacy Impact Assessment, and the State Department's Memorandum of Understanding with the Census Bureau; and Mr. Schnell's declaration makes broad assertions about "[a]ll modern databases" and what he "would expect someone with direct database access" to do when presented with a similar FOIA request. Schnell Decl. ¶¶ 2-11, 19-23; *see Reclaim the Recs.*, 2024 WL 3728979, at *6. In short, it is "unlikely that Schnell's declaration 'reflects a

10

reliable application of the principle and methods to the *facts of the case*.'" *Reclaim the Recs.*, 2024 WL 3728979, at *6 (quoting Fed. R. Evid. 702(d)); *see also id.* (collecting cases). Or, as Judge Caproni put it, "Mr. Schnell's general understanding of databases is not a substitute for the firsthand knowledge of Ms. Ballard and Ms. Westmark, who have spent years working with the specific database at issue in this case." *Reclaim the Recs.*, 2024 WL 3938296, at *8; *see also id.* (collecting cases).

Moreover, even if the Court were to consider Mr. Schnell's declaration in full, it fails to contradict the State Department's declarations. Mr. Schnell does not challenge the accuracy of Ms. Ballard's description of PIERS's capabilities. *See* Schnell Decl. ¶¶ 21-22. Instead, he takes issue with the Department's use of PIERS in the first place. *Id.* ¶ 22 ("[T]his is not the type of tool I would expect one to use in order to fulfill this particular FOIA request."). Mr. Schnell would have "someone with direct database access" make Structured Query Language queries "directly to the database by using standard database tools, as opposed to something like PIERS." *Id.* ¶ 23. He even goes so far as to propose specific queries that the Department could use to search a database of passport information. *Id.* ¶¶ 17-18, 24. Plaintiffs acknowledge that this would "require[] a different set of tasks distinct from those of a daily system user," but claim that an individual could meet the request "likely in conjunction with System Administrators . . . or Database Administrators." Pls. Opp. & SJ Br. at 9.

Mr. Schnell's "'generalities about technical capabilities of generic systems'" are "not enough to overcome an agency's detailed declarations 'as to the technical feasibility and reproducibility of a records request.'" *Reclaim the Recs.*, 2024 WL 3728979, at *6 (quoting *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 57-58 (D.D.C. 2015)). Sharon Westmark—who is the Division Chief of the Production Services Design and Development Division of the State

11

Department's Bureau of Consular Affairs—explains in detail why Mr. Schnell misunderstands the Department's capabilities. *See* Westmark Decl. ¶¶ 1, 6-14. Ms. Westmark declares: "While the Schnell Declaration might correctly explain how, in a typical database, a user can normally create a query and extract data from a database so long as the data is stored in database columns and fields, it incorrectly assumes that this is how data is retrieved by PIERS." *Id.* ¶ 8. And although Mr. Schnell is critical of using PIERS as "not the type of tool [he] would expect one to use in order to fulfill this particular FOIA request," Schnell Decl. ¶ 22, Ms. Ballard explains that the Department has "no other electronic recordkeeping system on which a search might reasonably result in the discovery of the requested information," Ballard Suppl. Decl. ¶ 10 n.2. In other words, Mr. Schnell's declaration—and by extension, Plaintiffs' arguments challenging the adequacy of Defendant's search—depends on incorrect assumptions about how Defendant stores and is able to retrieve passport information. As such, it fails to rebut Defendant's showing of adequacy.

Under FOIA, "a court must accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility." 5 U.S.C. § 552(a)(4)(B). Mr. Schnell's declaration does not provide the "tangible evidence" necessary to "impugn the agency's affidavits." *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 651 (internal quotation marks omitted). Because Plaintiffs' arguments all turn on Mr. Schnell's assumption of how the passport data can be queried, none convincingly rebut Defendant's showing that its search was adequate.

**B.     Undue Burden**

The State Department also argues that compiling an extract in response to the FOIA Request would require the agency to create a new record and that doing so would be unduly burdensome. Deft. SJ Br. at 6-10. Although FOIA "does not obligate agencies to create or retain

documents," *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980), "the application of codes or some form of programming" to "computer records found in a database" does "not amount to the creation of records," *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 653. "Thus, agencies and courts are left to the not-always-easy task of identifying when the manipulation of data points in an electronic database crosses the all-important line between searching a database, on the one hand, and either creating a record or conducting research in a database on the other." *Id.* (alteration adopted and quotation omitted). Here, the Court need not audit that line. Assuming *arguendo* that generating an extract with responsive data would not constitute the creation of a new record, the searches necessary to compile that extract would impose undue burdens on Defendant.

When responding to a FOIA request, "an agency need not conduct a search that plainly is unduly burdensome, nor need it fully comply [with] a request that imposes an unreasonable burden upon the agency, such as one that requires the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 225 (2d Cir. 2021) (alterations adopted and internal quotation marks omitted); *see also Halpern v. F.B.I.*, 181 F.3d 279, 288 (2d Cir. 1999) ("[A]n agency need not conduct a search that plainly is unduly burdensome."). Indeed, a FOIA request is not proper if "a professional employee of the agency familiar with the subject matter" is not able to "locate the records with a reasonable amount of effort." *Haitian Bridge All. v. U.S. Dep't of Homeland Sec.*, No. 22 Civ. 8344 (ER), 2024 WL 476304, at *5 (S.D.N.Y. Feb. 7, 2024) (internal quotation marks omitted). "Nonetheless, if an agency claims that responding to a request is unreasonable, it bears the burden to provide a sufficient explanation as to why such a search would be unreasonably burdensome." *Seife v. U.S.*

*Dep't of State*, 298 F. Supp. 3d 592, 612 (S.D.N.Y. 2018) (alteration adopted and internal quotation marks omitted).

Defendant has met its burden of explaining why searches necessary to identify responsive passport records would be unduly burdensome. As Ms. Westmark explains, PIERS is no normal database: "The data that PIERS retrieves and outputs is stored as 'images,'" and "[e]ach saved image of a passport record has a unique image identification number, which PIERS uses to retrieve the appropriate image to display to the user." Westmark Decl. ¶ 9. Because of this technical limitation, "the only way for the Department to compile and create an extract in PIERS, or to retrieve the data that would comprise an extract, would be for a Department employee to attempt to identify an accurate means of referencing and joining data stored across multiple repositories, which would require manual searches and also verification of the information in every record." *Id.* ¶ 10. Even ignoring the amount of time required to verify each record,[3] "this process would require at least a handful of technical subject matter experts and potentially hundreds of hours devoted to researching, reviewing, and validating the results retrieved." *Id.* Ms. Westmark's

---

[3] The Department asserts that it would be legally required to verify each individual passport record before producing it to Plaintiffs. *See* Deft. SJ Br. at 8; Deft. Reply & Opp. Br. at 7-8. First, not all individuals over 100 years of age are deceased. Second, many passport records were manually entered into PIERS, which means that some information (including birthdates) may by inaccurate. Ballard Suppl. Decl. ¶ 13. And "passport records frequently contain information belonging to individuals other than the recordholder." *Id.* ¶ 14. In each of these cases, blind disclosure of the records could result in the publicization of a living individual's "very personal information—including their passport and social security numbers." *Id.* ¶ 13. Therefore, Defendant would need to review each record "to ensure that the Department is compliant with both FOIA and other applicable statutes such as the Privacy Act." *Id.* ¶ 14. Plaintiffs take issue with Defendant's emphasis on the need to verify the records. They point to *Reclaim the Records v. Department of Veterans Affairs*, No. 18 Civ. 8449 (PAE), 2020 WL 1435220 (S.D.N.Y. Mar. 24, 2020), and argue that Defendant must present "hard statistics, or even an approximation, of how many records contain errors [and] the specificity and gravity of any errors." Pls. Reply Br. at 6-7. In the end, and as discussed herein, Defendant has provided a detailed account of the burden it would face independent of any verification efforts.

14

division would "be required to hire additional personnel" to extract the estimated "over 10 million" responsive records from the "hundreds of millions" total. *Id.*; *see* Ballard Decl. ¶¶ 18 (estimating the volume of passport records maintained by the Department "is likely at least in the hundreds of millions"), 19 ("[T]o satisfy Plaintiffs' request to extract passport data of all deceased persons, the Department would first need to coordinate with Records Center employees to manually examine every single one of those potentially hundreds of millions of paper records on site to determine whether any individual was born in 1923 or earlier."), 22 ("[T]he Department's preliminary estimate is that it would need to extract over 10 million records from PIERS that might correspond to individuals meeting the parameters of the FOIA [R]equest using this *ad hoc* query.").

Moreover, PIERS may only be searched by using a person's PII. Westmark Decl. ¶ 12. So, to search for all passport data that exists for passport holders born before 1924—that is, for those over 100 years of age, Plaintiffs' proposed proxy for death—the Department "would need to conduct a search for every individual date from 1923 backwards in time (*e.g.*, December 31, 1923, December 30, 1923, and so on)." Ballard Decl. ¶ 25. Because of PIERS's cap on search results, each search would return only up to 250 responsive records. *Id.* ¶ 20. And because multiple results may be associated with one recordholder, given that a unique PRISM number is assigned to each scanned document, the number of responsive individuals generated for each search may even be less than that number. *See* Westmark Decl. ¶ 13. Plus, even if all 250 results for a single birth date were associated with different individuals, that "would generally be a severe underestimate of the actual number" of passport holders who meet that search criteria. Ballard Decl. ¶ 20.

In the face of these detailed declarations, Plaintiffs again turn to Mr. Schnell. *See* Pls. Reply Br. at 8. They point to the "sample database queries" he proposed, "which would gather information from a passport database according to the criteria in the request, such as all data from

records where the date of birth is recorded as more than 100 years earlier." *Id.*; *see* Schnell Decl. ¶¶ 17-18, 24. Plaintiffs argue that those "sample queries are of the type that could pull information responsive to Plaintiffs' query from the Department database." Pls. Reply Br. at 8. But, as explained, Mr. Schnell's declaration—even if fully considered by the Court—rests on a faulty premise. The Department's PIERS database is subject to technological limitations of the type not germane to the general databases contemplated by Mr. Schell.

In a final attempt to make up for Mr. Schnell's lack of personal (or any) experience with PIERS or the State Department's passport records, Plaintiffs argue that the Memorandum of Understanding and the Privacy Impact Assessment contradict the Department's description of its search capabilities. *See* Pls. Opp. & SJ Br. at 8-10; Pls. Reply Br. at 5-6. Neither of those documents creates an issue of fact. To start, the Memorandum of Understanding does not indicate that the Department keeps or maintains an extract of all information for deceased passport holders. Contrary to Plaintiffs' suggestion, Defendant's ability to share a "bulk, anonymized data dump of passport information based on the date they were created," Ballard Decl. ¶ 11, does not mean that it could just as easily respond to Plaintiffs' FOIA Request for specific records of only deceased passport holders. In sharing data with the Census Bureau, Defendant did not need to retrieve specific records or cull the database based on PII—which is what Plaintiffs would have it do now to respond to their request.

So too with the Privacy Impact Assessment. Plaintiffs stress that the Assessment indicates that "PIERS provides structured query capabilities." PIA § (3)(c); *see* Pls. Reply Br. at 5. This may be true. But the queries allowed by PIERS are limited in nature—a user cannot search for and extract "passport data for persons born or deceased from a specific date to another specific date." Ballard Decl. ¶ 10. Likewise, Plaintiffs' speculation that "supervising officers should be

16

able to determine and assign individualized access levels" required to respond to Plaintiffs' FOIA request, Pls. Opp. & SJ Br. at 9, is just that—speculation. "[P]urely speculative claims" are not enough to counter detailed agency affidavits. *Grand Cent. P'ship*, 166 F.3d at 489 (internal quotation marks omitted). Neither the Memorandum nor the Privacy Impact Assessment undermines the Department's factual account of its search capabilities, as set forth in sworn declarations from employees with intimate knowledge of their record-keeping systems.

Together, the Ballard and Westmark Declarations "describ[e] with reasonable specificity the actual burden imposed" by Plaintiffs' request, *Seife*, 298 F. Supp. 3d at 612, and Plaintiffs' unsupported assertions do not cast doubt on those statements. *See Gottlieb*, 84 F.3d at 518 (explaining that a party cannot defeat a properly supported summary judgment motion by relying only on "conclusory statements" or "mere assertions that affidavits supporting the motion are not credible"). Accordingly, the Court concludes that responding to Plaintiffs' FOIA Request by compiling an extract of responsive records would be unduly burdensome on Defendant.

## IV. Conclusion

For the reasons stated, Defendant's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 28 and 34, to close this case, and to enter judgment in favor of Defendant.

SO ORDERED.

Dated: September 9, 2024
       New York, New York                                    _____
                                                             JOHN P. CRONAN
                                                             United States District Judge